313-0107, CitiMortgage, Inc. v. Sherry Sharlow, American General Finance Association, et al. Mr. Brooks, you may proceed. Thank you, Justice. May it please the Court, my name is Lloyd Brooks and I represent Sherry Sharlow. I come before the Court this morning to argue for the reversal of the decision made by the lower court. In the lower court, Judge denied a 2-141 petition to modify an order approving a sale in a mortgage foreclosure action where it should have been determined that there was a surplus, but the order approving the sale that was originally entered did not identify the surplus. And Ms. Sharlow simply came before the Court seeking her due. I'm sure the Court is well aware of the briefs and probably fairly familiar with the record as well, but I did want to point out one particular fact which kind of started this ball rolling. Citi Mortgage had notified Ms. Sharlow by sending her tax records that there was some kind of surplus to be gained in which Ms. Sharlow had to pay some sort of a penalty or extra taxes to the IRS as a result. Had it not been for that, no one may not have noticed what had happened. In any event, the judge ultimately concluded that he did not believe that it was inappropriate to allow Citi Mortgage to impose post-judgment interest using a statutory rate, and although most judgments are permitted to do so, here it was imposed from the date that the original judgment foreclosure was entered, which was well before the judge actually entered the order approving sale. So there's that gap of time that really interests my client as to why she was required to pay post-judgment interest when she had no personal liability for those amounts yet. And I think that's at the heart of this case, is whether or not Citi Mortgage is entitled to impose that statutory judgment rate even though no final judgment had been entered against my client. When your client, when she received that notification, I don't know if it was in the form of a 1099, do you know the amount? Off the top of my head, I do not, but that 1099 form is in the record. It's attached to the affidavit that Ms. Sharlow submitted with her 1401 petition, so it is in the record. And can you tell me when that was received by her? It was shortly before, this is also addressed in her affidavit, it was I believe maybe 6 months or so before the 1401 petition was filed because essentially what occurred was she received the form, didn't know what the heck it was, didn't understand it, went to her tax professional, her tax professional says, oh, you got to pay taxes on this, and sometime shortly thereafter she decided, hey, maybe I need to figure out what happened to that foreclosure because this isn't what I thought occurred, retains counsel, we file the petition. But again, that is in the record if your honor is interested. What I would say the central argument being made by city mortgage here is, and there are a few, so I don't want to mislead us, there's only one, but I think their central argument is starting off by saying, well, you can't ask for this regardless of what happened because a 1401 petition is no longer allowed because a deed has been issued. And this court, before a briefing was completed, did permit city mortgage to grant a motion to take judicial notice of a deed that they say had been issued. Ms. Charlo has objected to that and continues to do so in her It's inappropriate, I think, on two levels for this to occur. One, this was never brought before the trial court. The trial court never got a chance to opine on this situation, and Ms. Charlo never got an opportunity to address these arguments before the trial court. And I think what underlines the unfairness here is we're simply going to take city mortgage at its word that this deed or what's contained in the deed is accurate. I'm sure they're going to argue, well, it's a recorded document so you can take judicial notice of it. What is the difference between taking judicial notice that the deed was recorded and then the statements that are found in the deed are actually accurate? That's never been tested by any court. There's been no evidence taken, no depositions, no interrogatories, nothing to actually test the statements inside the deed. And so what city mortgage really wants this court to do is assume what's in the deed is true as opposed to whether or not it was simply recorded. As I stand here, I suppose I've got nothing that says that deed was never recorded. It probably was, but that's not the point. Are the statements found in the deed accurate? We don't know that. And I think that goes to my next point, which is their argument should be considered waived as a result. It was never presented to the trial court. And I'm sure as this court is well aware, arguments raised for the first time on appeal are generally not considered. And I think for those reasons, their argument about us not being able to even file a 1401 petition at this stage shouldn't be considered by this court. But even if this court was interested in looking at this issue of whether or not the 1401 petition was somehow barred by the IMFL, I think the decision that they would rely upon doesn't get them where they want to go. And that's mostly because Ms. Charlotte is not seeking to undo the title. She's not seeking to upset the apple cart. She doesn't want the home back. She just wants the money that even city mortgage says exists. I don't see how the trial court somehow going back and going, look, I made a mistake when I entered the language saying there was no surplus. There is a surplus. I'm going to modify the order of proof and seal to say that there is a surplus, which would then open the door for Ms. Charlotte to file a petition seeking that those funds be turned over. So she's not saying the city mortgage, you've got to give my house back or whomever city mortgage claims now owns it. She's not looking to undo that. And that's what that rule that's found in the IMFL is directed to doing, is setting a time limit at which some point the title to the property can rest. And although I've got my personal quandaries about ever telling trial judges that they shouldn't be able to do justice, I do understand the public policy behind the provision. At some point you want the title to rest. But Ms. Charlotte is not looking to undo that. So I think for those reasons that even if this court wanted to look at the issue of whether or not the 1401 petition was barred, it shouldn't bar this particular petition because we're not looking to contest the title. So back to what I feel is the main issue here, which is whether or not you can impose a statutory interest. I think you cannot, and there are several reasons why. First of all, it's well known that the judgment of foreclosure itself is not a final and appealable order. The Supreme Court has now said that on multiple occasions. The appellate courts in almost every district of the state have said that in one form or another on multiple occasions. I think that's not really open to contest. But why is that important? Because the states in this court have said you need a final judgment before a statutory interest rate can even kick in. So that immediately raises a red flag as to whether or not a judgment of foreclosure is the appropriate order to look at when you want to start attaching statutory interest. My second point is the Supreme Court going back now for more than 100 years, we're looking at 150 years, has said a judgment of foreclosure is simply a conditional decree. That's all it is. Again, underlining that it is not a final order. It's essentially simply a statement saying we find that there was a default on this loan, that monies are owed on this loan, and we're now decreeing that if you don't pay this money by a certain date, your home can be sold. It is not a final judgment. It's simply a prelude to a judicial sale. It's not, again, not the kind of order that was intended for statutory judgment. And this wouldn't be the first court to address that issue, and I'm sure Your Honor is well aware from the briefing that there is a prior decision, a Standard Bank v. O'Callaghan decision, that addressed this very point. You're just saying conceptually a judgment of foreclosure is not a judgment on a loan. It's not the final judgment. Or a money judgment. Right, it's not a money judgment. That's correct. It's a conditional decree. Ultimately, it could lead to one, but it itself is not. Don't you have a problem with Standard Bank because that was relying on a previous statute, and we're not dealing in this case with a conditional judgment or a deficiency, arguably. So it's a very different situation, different statute, different circumstances in this case. Well, Your Honor, I think I would disagree with that position. First of all, the IMF on this current form is largely the compilation of other provisions of the codicil procedure that existed before 1987 into one scheme, essentially trying to make the mortgage foreclosure procedure one-stop shopping, so to speak, so that you didn't have to open up five or six different volumes of the codicil procedure to find all of the various provisions that you needed. The Standard Bank decision is decided under a statute in the codicil procedure that defined how to enforce deficiency judgments, which is inside now the IMF felt. It's not worded exactly the same, so I'm not going to say, oh, they just simply changed the codification. They didn't do that. Why don't you agree that this isn't a conditional judgment that we're dealing with? That we're dealing with in this case? Oh, no, I believe that it is. The Supreme Court says the judgment foreclosure is simply a conditional decree. Under the circumstances of this case. Absolutely. There was no finding that my client absolutely owed any money to City Mortgage in the terms of a personal judgment until an order-approving sale was entered, in which case they decided to do it. I'm referring to the 304A finding. And City Mortgage does raise that. Does that change the nature of this? It does not, because we need to look at, again, what the judgment foreclosure did. The 304A language simply now made that a final and possibly appealable order that my client could contest whether or not there is that they should have been given this decree, but it still doesn't somehow mean you now have a personal judgment against you in the amount of I believe it was $200,000. It doesn't somehow change that. It only made it so that now if she wanted to complain about that order, she could have came before this court earlier than she was entitled to otherwise. So I don't think that makes it all of a sudden a money judgment. It doesn't. It just makes the finding now susceptible to appellate review as opposed to having to wait until the order approving sale was entered before she could file a notice of appeal. So I think City Mortgage, they certainly made that argument, but I don't think it helps them, because, again, it only makes it available to this court for review and not somehow change the very nature of the order itself. That matters to the Supreme Court if something was final or not. It does make it. I absolutely agree. For purposes of jurisdiction of this court and the circuit court, for that matter, entering a 304A language absolutely makes a difference. I will not take issue with that. The question here is does it change the nature of the judgment that's being reviewed. I don't believe that it does. The judgment still says what it says, other than, oh, well, now I think this is finite enough that if you want to enforce the judgment or have the appellate court look at it, you can do that, because I no longer want it to be interlocutory, essentially what the 304A language does. So it doesn't all of a sudden convert it now. Let's say, for instance, City Mortgage now wanted to start garnishing Ms. Charlo's wages or seizing other property. They could not do that using the judgment of foreclosure. It's not a money judgment. She doesn't owe them that dollar amount. There's a finding that that amount, and I guess it's kind of tricky to say it that way. Certainly there's a declaration that that amount is outstanding. However, the purpose of the order is only to set up the procedure for the sale if she decides not to pay it. There's not a final judgment. They could do nothing else other than conduct that sale. Otherwise, certainly City Mortgage should have been able to garnish my client's wages or take other action against her if that 304A language all of a sudden now converted the judgment in foreclosure into some kind of a money judgment. At this stage, we don't know. We have a judgment of foreclosure. You have just a declaration that you had this amount of money given to you, collateralized by your home, and now we're saying you didn't pay that. We now say that this money is owed to us, and we have the right to come and get that collateral. At this point, there is no way to know whether it was a deficiency or a surplus, because we don't know if the collateral will satisfy the judgment. That is absolutely correct, and it's actually an excellent point, Justice, because that goes to what I'm saying, which is that's how we know this isn't a money judgment, because we don't actually know what money my client's going to be left owing when this case is over. If any. If any, correct, and in this case, there isn't any, because the collateral hasn't been collected, the collateral hasn't been sold. In fact, my client's given the opportunity to, in fact, pay those funds voluntarily before the collateral could be seized. I do want to make one more point, and I do see my time is running out, and that's the issue of due diligence, which is being raised by city mortgage. I think for several reasons that's not an issue here. First of all, the trial court never passed on the issue. They excused it, and so even if this court thought that due diligence needs to be addressed, this case would have to be remanded because it wasn't. This case presents itself essentially after a motion of strife. The 214.1 petition was filed by my client. The 2615 motion was filed by city mortgage. So there's never been a ruling on the merits with respect to due diligence. So I think for that reason, the due diligence issue is not one, and I would ask that this court reverse the decision of the lower court. Thank you, Mr. Brooks. You'll have time to reply. In response, Mr. Holtz. How did you pronounce Holtz? Holtz. Holtz. I had a T. Okay. I was just looking for the T there. May it please the court, Ryan Holtz on behalf of city mortgage. This case involves a completed foreclosure and a subsequent 214.1 petition. City mortgage served Ms. Charlo with the complaint and with a notice of all relevant hearings. Ms. Charlo opted not to appear or otherwise attend at any point, and so the court entered a default judgment of foreclosure. The property was ultimately sold to city mortgage on a full credit bid, and that sale was confirmed. Nearly two years after confirmation, Ms. Charlo filed a 214.1 petition asking city mortgage to pay her approximately $10,000. What do you mean by the language full credit bid? Full credit bid. The amount of the judgment that was entered in the judgment of foreclosure was $208,000, and that provision, the judgment explicitly included a provision that 9% interest would occur on that judgment from the date of sale. I'm sorry, from the date of judgment to the date of sale. And so the full credit bid was with that interest plus the $208,000, city mortgage essentially bid the full amount of the debt. It extinguished the debt entirely, so there was no surplus and there was no deficiency. Somebody at city mortgage obviously didn't understand it in that term because they issued a notice of surplus, a tax document. I think the tax document is in the record. The tax document has absolutely nothing to do with the surplus.  And the fair market value, which is determined by the bid price, was $218,000. It has absolutely nothing to say about any surplus. That's simply a red herring. Mr. Brooks uses that to try to get around the diligence argument. But there is nothing in that tax form, if you look at it, that indicates a surplus. If it was $208,000, as Mr. Brooks claims it should be, the tax form would have also been issued. It would have just said $208,000 instead of $219,000. And it would have compared that to the $183,000 that was the principal due. That's an IRS form. That would have been issued regardless of whether there was a surplus or a deficiency as long as the bid price exceeded the principal balance. Basically, it's a capital gains. They're saying she's gaining something from this, so if the bid price exceeds the principal balance, she has to pay taxes on that. And that was the case here? That was the case here. By how much? It was $183,000 principal versus $219,000 or $18,000 for the fair market value. So that really gets back to whether that fair market value bid price was proper. We believe it was, quite clearly. So you wrote her a check? We didn't write her a check because there was no surplus. The bid price included the interest that the judgment allowed.  Had there been no interest, City Mortgage would not have credit bid the $219,000. And that goes back to the diligence point I'll get to. Actually, I'll get to it right now. The point is Ms. Charlo was served here, and the judgment of foreclosure, she was served with the notice of that hearing. And so Ms. Charlo couldn't have appeared and challenged the 9% statutory interest that was provided for in the judgment. She chose not to. And that's particularly troublesome here because she essentially created a situation where City Mortgage was allowed to bid what it was entitled to under the judgment. And she sat on the sidelines and allowed that to happen. Then she comes in after the fact, two years later, and says, Ha-ha, gotcha. You guys overbid. I didn't challenge you on that. I could have, but I didn't. And so now you owe me, out of your pocket, $10,000. That's simply not what 214-0 was about. Here's another way of looking at it as to the due diligence. Sure. She filed her papers after she got the notice about this tax notice. Isn't that when it happened? Yes. So you've got a person who's sort of sitting by the side, okay, my house is gone, and then all of a sudden she gets this tax notice from your bank. Absolutely. And you billed this amount, and you're saying, oh, we have a right to bid this, which the law says you can bid that, and then it caused her to have a tax liability, right? Well, Ms. Jarlow would have had a tax liability no matter what, but I guess you could say it increased her tax liability. I think she says $460. Okay. So she had an increased tax liability as a result of this. And you're saying that you're still entitled to this because you're entitled to interest under the 9% rule. Correct. Correct.  No, I don't agree with you on that, Your Honor. What? I said if. Oh, yeah, I'm sorry. If it is a money judgment. Yes, I don't believe it is a money judgment. I didn't think you would. I'm sorry. I apologize. But I would like to, if I could, go back to this 1509 issue, if possible. Mr. Brooks brought it up. I think we believe that's dispositive of this case alone, and there's nothing else that needs to be decided. Under subsection A of 1509, upon confirmation of sale, the officer will issue a deed. Under subsection B, that deed transfers title. That happened here. The selling officer issued a deed to HUD as the assignee of city mortgage. Subsection C mandates that the transfer of title shall be an entire bar of all claims of parties to the foreclosure. A 214.01 petition is a claim. The Illinois Supreme Court in Sarkeesian is held. It's essentially a new claim, a new cause of action. Ms. Charlo filed her 214.01 petition over a year after title transfer, and so under the plain language of 1509, the transfer of title to HUD acts as an entire bar to Charlo's 214.01 petition. The First District has addressed this exact same issue earlier this year in the Pratt-Hoffer case. The court held that provisions of the Code of Civil Procedure that conflict with the IMFL are inapplicable, and that 214.01 does conflict with 1509. 1509 cuts off challenges after title transfers. Challenges to what? This is a point. I think Mr. Brooks made this point regarding the language of 1509C. 1509C has an exception that if you challenge the judgment under 213.01G, you can claim an interest in the proceeds of the sale. 213.01G applies to people who were served by publication. By explicitly exempting people who were served by publication to challenge for the proceeds of the sale, you are also implicitly rejecting the idea that people who were not served by publication can challenge for the proceeds of the sale. Ms. Charlo was not served by publication. She explicitly does not fall within the exception. So the legislature in 1509C acknowledged that there was going to be a limited exception, but that strongly suggests that this wasn't just limited to title. There is an issue here, and this goes back, I believe, to the purposes and objectives of the IMFL. The purposes and objectives of the IMFL were to decrease the cost of foreclosure and increase the sale. And one of the ways you do that is by certainty. And so 1509C provides certainty, provides certainty that nobody is going to come in two years later, and apparently, according to Mr. Brooks, without having to exercise any diligence in the trial court, and challenge your judgment, force you to come into court, force you to determine whether there's a surplus or not. Isn't that the problem, excuse me, with regard to your argument on this point? They didn't seek to vacate the judgment. They didn't seek to vacate the transfer of title or anything like that. They're just interested in the proceeds, and under subsection C of that statute, 1509, they can seek something about the proceeds. I disagree. Only parties who were served by publication can seek the proceeds of the sale, explicitly by that statute. What would be the policy by that extension? The way you're looking at it. I think the policy, I think that's a fair point. The policy of it goes back to the diligence. People who are served by publication, while we say publication provides for service, the legislature has determined that those people are given a little bit of an exemption and a little bit of an additional right to challenge because we're not sure that they're always going to be getting notice. Why don't we just get rid of publication? I'm working on that, Judge. I mean, okay. But I think that's the policy. The policy there is to provide a limited exception. If someone was served by publication, they may have not actually had notice, and they may have had no good reason to have notice. Okay. What can they go after, then, under that exemption? It explicitly says they can challenge for the proceeds of the sale. I know. So isn't it not also a reasonable inference that the whole policy of dropping the door after this time, you can't seek to challenge, like you're saying, is really to quiet title, to allow the new possessor to be unharassed by former mortgagors, even the banks? That certainly is one of them. That certainly is one of the policies. But if that was going to be the policy of the legislature, they would have said any party can challenge for the proceeds of the sale. They explicitly didn't say that. They explicitly limited that to parties challenging under 213.01g, and that's critical. If the legislature had wanted to do what Your Honor just mentioned, they could have easily done that, and they didn't. Because, again, the point is to reduce costs and increase sales bids. If parties know that they're going to get challenged on their sales bids, whether it be for the title or whether it be for a surplus like this, they're going to be more reluctant to purchase properties. They're going to be more reluctant to bid fair market value for those properties. And so that ultimately rebounds to the detriment of borrowers. I think we said it in a federal case, U.S. v. Buckman, where the court says that ultimately leads to higher deficiency judgments and lower surplus amounts if you continue to allow less predictability in the foreclosure sale process. But who's the seller here? The seller is the mortgagor, right? The seller of the property, I mean. Really? I mean, there are rights that come in by the holder of the mortgagee to force a sale, right? Yes, sir. In the position of the, quote, not really, that's misnomer homeowner, as long as there's debt, you're not owning anything. But, okay, the titleholder, subject to the lien of the bank. Yes, sir. So I guess what I'm saying, aren't we going after something different? I mean, we're going after proceeds, sales? Well, I think it's also worthwhile pointing out that what- Well, it would affect it here. I mean, look at how City Mortgage has been dragged into a case two years later after the sale, two years after confirmation, that has now been briefed extensively at the trial court, briefed extensively on appeal. So why should City Mortgage bid? City Mortgage should have. Okay, so what you're saying is that you're saying the mortgagee now, the mortgagee would not show up at the sale. Well, no. I think this is a perfect example. City Mortgage would be, if Mr. Brooks's position becomes the law of the land, City Mortgage should come into the foreclosure bid and bid $208,000, not $219,000. And then they should say, we're entitled to the interest, so we deserve an efficiency judgment against Ms. Sharlow. That's what will happen if the court accepts. You'll bid less to protect yourself from these subsequent challenges. Wait a minute. You said $280,000 was what they were going to bid. They bid $219,000. They would bid $208,000. Oh, $80,000. I thought you said $80,000. No, I'm just saying, sorry. Wow, that's a pretty good deal. That would have been a great deal. I thought the $208,000 was the fair market value, was the determination of fair market value. The IRS form indicates the fair market value is the bid price, which was in this case $219,000. The judgment amount itself was $208,000. So my point is, if this was the law of the land, city mortgage should have bid $208,000, and then later claimed that if they were entitled to interest, make that interest a deficiency judgment. But if the amount of her indebtedness is $183,000 and the amount of all the costs of the foreclosure, bring that up to the $208,189.93, and that's what was bid, and the collateral equals that, why would there be any deficiency? If what you're saying is that the fair market value of the property is $208,189.93, and that is her unpaid mortgage balance and the costs of the foreclosure suit, why would there be any... I mean, in your saying, the house, the collateral, is equal to the amount of that indebtedness. No, I'm saying the IRS considers the bid price equal to the fair market value. As you know, foreclosure prices vary. My point is that city mortgage would not have bid $219,000 if the judgment of foreclosure didn't allow for it to have interest. When you're arguing deficiency, if I understand you correctly, what you're saying is the $208,000 and something represents what the cost and the indebtedness was. Well, the judgment of foreclosure found that, and then it included the post-judge interest. Okay, so that was a total of $208,000. Yes, correct. You bid the $218,000, $219,000. Correct. Okay, because that included interest. Correct. Okay, it wasn't deficiency, it was additional interest that accrued after those orders were entered. That's what you were... Correct. And so what you're saying is that in the horror story that would happen based on whatever comes out of this case is that banks wouldn't bid the amount in the judgment plus any interest that accrued to the date you're doing this. You wouldn't include the interest that had accrued because you'd get stung by that, so you'd just bid with the earlier amount, $208,000, and then seek an additional judgment for the additional interest at a later time. Yes, I mean, you would be hesitant to bid if you knew that someone was going to come in and claim that because you bid what the judgment tells you you're allowed to bid, you have to pay them out-of-pocket $10,000. And if I understand the practice now is that when a bank goes in and if they're the only bidder, which typically they're the only bidder, they bid the earlier judgment amount, I mean the amount of indebtedness plus all the costs involved from that other earlier order, and they also add to that or tack on to that any accrued interest to the date that they're doing this final. That's the typical approach to banks today, correct? That is the typical approach because it's practical and it's efficient. It's the cleanest approach because it results in no deficiency or a surplus. It just extinguishes the debt. It wipes it out. Exactly. There's not a deficiency that's entered against anybody. There's not a thing. What they're doing is clearing the books, getting the title, clears it for the mortgagee also. That's exactly right, and that's exactly what happened here. However, that does generate, for tax purposes, this order. It generates a slightly increased amount. If I could just briefly discuss the merits of whether we're entitled to post-judgment interest. I know I'm running real short of time. I apologize. You're only entitled to it if it's a money judgment, right? Mr. Brooks's argument is that you're entitled to it if it's a final judgment, and the Illinois Supreme Court in EMC Mortgage v. Kemp held that a judgment of foreclosure is a final judgment as to the issues it adjudicates, and one of the issues a judgment of foreclosure certainly adjudicates is the amount due in owing. What I'd ask this court is, what is city mortgage entitled to? Are they not entitled to any interest at all? They're entitled to interest before the judgment of foreclosure at the contract rate. They're entitled to interest at the statutory rate after confirmation of sale. Mr. Brooks is arguing that they shouldn't be entitled to any interest at all in that donut hole period. The judgment of foreclosure essentially establishes and merges the documents. It merges the note in mortgage into a judgment. It determines the amount of the judgment at $208,000 in this case, and then held that interest could accrue. That is a final determination. When a foreclosing party goes before the court on a judgment of foreclosure, it's required to provide an affidavit of approval establishing the exact amounts due in owing. If it fails to do so, it's not going to get a judgment of foreclosure. That is a final judgment as to the amounts due in owing. Under the interest statute at that time, that judgment should accrue interest. The interest statute simply says on a judgment. This is a judgment as to the amounts due in owing. Now, you have to wait until the sale is to determine whether that becomes a deficiency or a surplus. You just have to because you don't know the selling price yet. But at the time the judgment is entered, the court has conclusively determined the amounts due in owing. And I'd also point out that if I could just finish, I'd point out 304A language, which the court explicitly held that this judgment was not only final, but it was final and appealable. I have a final question for you. Is post-judgment interest required? The interest statute says, I believe, shall impose interest at the statutory rate. So I would argue that, yes, there's not a lot of discretion in the trial court to impose interest. No, no, I mean if you are owed, if you have a judgment against someone, are you required to charge them interest? You are not required to, and, you know, you're not required to. Thank you, Mr. Holtz. Mr. Brooks, you may reply. Thank you, and good morning once again. I've just got a couple of quick points. Now, start from the back and work forward. This issue of charging interest on a judgment of foreclosure, there's absolutely nothing in the IMFL that says you have to charge statutory interest. In fact, there's no requirement of that at all. Instead, though, the IMFL does permit the mortgagee to seek the contract rate, even on the judgment of foreclosure. That is in the IMFL. So I take issue with counsel's point about my position being you don't get any interest. That's not true. It's just what is the source of that interest rate. The general practice right now, I think, for most lenders is to just go, ah, we want the statutory interest rate. Why is that? Well, that's because the prevailing interest rates aren't as good. They are entitled to ask for the contract rate if they want it. Okay, in this fashion. What was the contract rate? Off the top of my head, Your Honor, I do not recall. We focus so much on that. Contract rates are lower. The prevailing interest rates in this market are definitely lower than the statutory rate, and I believe that's what drives the lenders to simply say, oh, we want to charge the statutory rate. In this case, there was no request because they weren't going to do anything about this until they got the notice. Well, that's not true from the bank's perspective, because essentially now on their books they got to show that they collected $219,000 for purposes of reporting to whoever they report to, as opposed to what they should have reported, which is what they would have been able to collect. They did not collect that $10,000 from Ms. Charlo. They just simply bid at the sales saying that's what they think the property is worth. Now, their business purpose in trying to zero out the books is not Ms. Charlo's concern. In fact, as the Court has now pointed out, it actually now generated an unfairness because now Ms. Charlo is being asked, for whatever the reason, to pay taxes when she clearly has lost a home. Counsel's argument was kind of lost on me there. She's now found to have owed City Mortgage $220,000 on her home. But the other side of that point is what happens if the horror story that your opponent is suggesting happens, that they get the 208 judgment and then they get a later judgment for interest for another $10,000? And then that would be against your client and would be covered by the sale price at the sale, right? Well, Counsel's portrayal of the horror story is just simply inaccurate. Don't banks – can't banks go after the – it's not a deficiency. Can't they go after an additional judgment for the interest that's accrued? And that's actually the point. They can go after the interest that's accrued. The whole point here is this interest never accrued. It was not permitted. So is Counsel correct that in this particular instance City Mortgage might lose out? Yes, but that's at their own direction that that happened. In the future, if we're worried about horror stories, the bank's only going to bid what they're permitted. If they're only permitted the contract rate, then that's what you're going to include in your bid. I think he's attempting to create the scare tactic that, oh, if we do this, this is actually going to be somehow hurtful to the borrower because we're going to generate deficiencies. No. It's just going to change your bidding practices such that you're not imposing interest that you were never entitled to. So what you're saying is they're going to bid at least the contract rate. Correct. They'll bid at an interest rate that they're permitted to have. Under the contract. Correct. If they want interest at all. They're not required to even ask for the interest, but they do have to put in that request so that the court can calculate what the appropriate rate is. But you do agree your client would have had to make that request? My client would have had to make that request? With a different interest rate. No, because the bank was never statutorily permitted to do it in the first place. If the bank was entitled to interest, then your client would have had to make the election to say, I want the contract rate rather than the other rate under the statute. If they were permitted to have the statutory judgment rate, I suppose that could be a contest my client has made as to, hey, why aren't we using the contract rate? But doesn't that other statute require your client to say, I want you to use the contract rate? No, the statute doesn't allow them to impose the statutory rate in the first place. So from CityMarket's perspective, they had two choices, the contract rate or no interest. They can't then create a third one and go, well, we want to go ahead and impose the statutory rate because we make more money. You're back to the view that that's not a judgment. Correct. And counsel touched upon that. We're getting back to the point that that isn't a money judgment. Just because there's a dollar amount mentioned in the judgment of foreclosure doesn't somehow convert it into a money judgment. I didn't hear counsel make an argument that his client was somehow allowed to enforce that judgment on my client outside that courtroom, which if it was a final money judgment, he would have been able to. And just to clarify my client's position on what kind of judgment is necessary, it needs to be both final as well as a money judgment. The problem here is the JOF, even though it might have been for purposes of appeal, a final order, it was not the final order and it was never a money judgment. And that is how we know the statutory judgment rate should not apply. But you don't disagree they could elect to have the contract rate? I don't disagree. Although in this case, I think the time for them to do that is over because now they're beyond the two years to seek to change that. In fact, that was an attempt that was made at that, and it's in the report of proceedings at the final hearing. Counsel for city mortgage actually somewhat kind of, I don't want to say conceded, but no longer was refuting that they weren't entitled to the statutory interest, and then started to argue for why they should have been just allowed to now modify it to elect the note interest rate. But that became a moot point as the judge denied the 1401 petition altogether. There is one more point I'd like to discuss, and that's whether or not Section 15-1509 somehow bars this 1401 petition. Counsel talked about the provision allowing for you to proceed against the proceeds. It's only limited to people who were found in default under 1301G. I disagree with that interpretation. If you compare 1301G to 1509, it becomes obvious why they needed to put that sentence in there, because 1301G says the exact opposite, that if you somehow lost an interest in real estate as a result of service by publication, you've got one year to come back and still attack the title. Well, obviously they didn't want that to be the case in a mortgage foreclosure, so they added that sentence. That sentence is not for the purpose of excluding anyone else from seeking the proceeds. It's to point out that we don't care what 1301G says. You cannot do that here in a mortgage foreclosure case. For instance, if it was a quiet title action under 1301G, you still might have been provided some relief to come back to the title. But in a mortgage foreclosure case, they were trying to make sure that that was cordoned off, so the mention of 1301G was not to say no one else can look for the proceeds. It was just to point out that anyone who is coming under 1301G, this rule applies to you differently than it would in some other kind of real estate contest. I was just going to say, unless there are other questions. I don't believe there are. Thank you for your time. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. This position will issue. The court will stand in brief recess for panel discussion. The court is now in recess.